IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THE NORTH CAROLINA EYE BANK, INC., d/b/a MIRACLES IN SIGHT, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19CV614 |
| HIGH ENERGY OZONE, LLC, et al., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendants High Energy Ozone, LLC ("HEO3"), John C. Neister, and S. Edward Neister's motion to dismiss or, in the alternative, to stay pending mediation. (Docket Entry 8.) The motion has been fully briefed, and the matter is ripe for disposition. (*See generally* Docket Entries 9, 13, and 14.) For the reasons that follow, it is recommended that Defendants' motion be denied in part, with respect to dismissal of Plaintiff's claims, but granted in part, with respect to staying this action pending mediation.

**I. BACKGROUND**

Plaintiff, The North Carolina Eye Bank, Inc. d/b/a Miracles In Sight ("MIS"), filed this diversity jurisdiction action pursuant to 28 U.S.C. § 1332 against Defendants. (Compl. ¶ 5, Docket Entry 1 at 3.) On or around March 31, 2016, the Neisters formed HEO3 to commercialize Far-UV Sterilray ("Technology"), a technology patented by Defendant S. Edward Neister that relates to disinfection devices. (*Id.* ¶¶ 9-10.) Based on the potential use of the Technology, MIS, a nonprofit eye bank, invested a total of $2 million in HEO3: the

1

first tranche of $1 million in or around June 2016, and the second tranche of $1 million in or around April 2017. (*Id.* ¶ 29.) These investments were made pursuant to a Unit Purchase Agreement between HEO3 and MIS, which the parties signed on June 21, 2016. (*Id.* ¶ 13; *see also* Ex. A, Docket Entry 1-1.) Plaintiff and Defendants John Neister and S. Edward Neister also entered into a Limited Liability Company Agreement ("Operating Agreement") on June 21, 2016. (Compl. ¶ 25; *see also* Ex. D, Docket Entry 1-4). Plaintiff and Defendant HEO3 also entered into a Memorandum of Understanding ("MOU") on April 10, 2017. (Ex. F, Docket Entry 1-6.)

Plaintiff alleges that Defendants "made several material representations and warranties, on which [MIS] actually, reasonably, and justifiably relied to its detriment," which resulted in Plaintiff's decision to bring this suit against Defendants on June 19, 2019. (Compl. ¶ 17.) Specifically, Plaintiff alleges various causes of action: fraud; negligent misrepresentation; unfair and deceptive trade practices; breach of contract;[1] breach of implied duty of good faith and fair dealing; breach of fiduciary duties;[2] constructive fraud; tortious interference with contract and/or prospective economic advantage; and alter ego/piercing the corporate veil. (*Id.* ¶¶ 47-122.) Plaintiff seeks compensatory damages, punitive damages, and costs of suit. (Compl. Prayer for Relief, Docket Entry 1 at 25-26.)

---

[1] In Count Four, Plaintiff alleges a claim for breach of the Unit Purchase Agreement and the MOU. (Compl. ¶¶ 64-69.) In Count Five, Plaintiff also alleges a claim for breach of the HEO3 Operating Agreement. (*Id.* ¶¶ 70-75.)
[2] In Count Seven, Plaintiff specifically refers to the Neisters' breach of fiduciary duties as managers of HEO3. (Compl. ¶¶ 83-91.) In Count Eight, Plaintiff specifically refers to the Neisters' breach of fiduciary duties as controlling members of HEO3. (*Id.* ¶¶ 92-100.)

2

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(1), Rule 12(b)(6), or the Court's inherent power and discretion to control its docket; alternatively, Defendants move for a stay of this matter pending mediation. (Docket Entry 8 at 1.) Defendants contend that, "[u]nder the governing contract, [the Unit Purchase Agreement,] pre-suit mediation is a mandatory condition precedent to filing suit. Because the Plaintiff has failed to mediate this dispute prior to bringing suit, the Court should dismiss this action . . . [or] . . . stay this action pending the required mediation." (Docket Entry 9 at 1-2.)

In particular, Defendants cite to Section 7.14 of the Unit Purchase Agreement between HEO3 and MIS, which provides:

> <u>Dispute Resolution.</u> In the event of any dispute regarding the interpretation, breach or enforcement of this Agreement, the parties will first endeavor to resolve such dispute through direct discussions between the chief executive officers of the Company [HEO3] and the Purchaser [MIS]. If such discussions do not result in a resolution, then the parties will submit the dispute to mediation with a mediator reasonably acceptable to the Company [HEO3] and the Purchaser [MIS] for a period of not less than thirty (30) days. If such mediation does not result in a resolution of the dispute, either party may bring an action in court.

(Ex. A, Docket Entry 1-1 at 16.)

Defendants first state that New Hampshire law should apply to the contract because a federal court in North Carolina exercising diversity jurisdiction must apply North Carolina law regarding choice-of-law, which gives effect to a contract's choice-of-law provision. (Docket Entry 9 at 4.) Defendants cite to Section 7.4 of the Unit Purchase Agreement, which provides

> <u>Governing Law.</u> This Agreement shall be governed by the internal law of the State of New Hampshire, without regard to conflict of law provisions.

(Ex. A, Docket Entry 1-1 at 15.)  Defendants contend that, under New Hampshire law, clear and unambiguous contractual terms can create a condition precedent to filing suit, and, since the terms of Section 7.14 of the Unit Purchase Agreement are clear and unambiguous, mediation is a condition precedent to filing suit.  (Docket Entry 9 at 5-6.)  Because Plaintiff did not comply with this condition precedent, Defendants move to dismiss or, in the alternative, stay Plaintiff's complaint pending mediation.  (Docket Entry 8 at 1.)

In opposition to Defendants' motion to dismiss, Plaintiff first argues that the contract provision on which Defendants rely for arguing that mediation is a condition precedent to filing suit—Section 7.14 of the Unit Purchase Agreement—is "not expansive" but instead "limited to disputes 'regarding the interpretation, breach or enforcement' of the Unit Purchase Agreement, a scope that only arguably encompasses a fraction of the parties and claims at issue."  (Docket Entry 13 at 11-12.)  Specifically, only Defendant HEO3 was a party to the Unit Purchase Agreement, but Plaintiff alleges claims against HEO3, John C. Neister, and S. Edward Neister.  (*Id.* at 11.)  Additionally, Plaintiff has alleged eleven causes of action but contends that the vast majority of these causes of action concern various tort and statutory claims as well as the Operating Agreement and MOU and are, thus, not subject to the mediation provision in the Unit Purchase Agreement.  (*Id.*)

Second, Plaintiff contends that, even if the mediation provision in the Unit Purchase Agreement applies to its causes of action, Defendants waived the right to rely on the contractual mediation provision and are estopped from asserting that provision.  (*Id.* at 12-13.)  To support this argument, Plaintiff argues that "[MIS] made repeated efforts to resolve its concerns prior to filing suit, but Defendants refused to address [MIS's] concerns . . . [and]

4

[d]ue to Defendants' unwillingness to meet, talk, or share information voluntarily, [MIS] had no choice but to file this action to enforce its rights." (*Id.* at 13.)[3]

Finally, Plaintiff argues that dismissal is not appropriate under either Rule 12(b)(1) or Rule 12(b)(6). (Docket Entry 13 at 13-16.) Moreover, Plaintiff argues that dismissal without prejudice "would be needlessly inefficient and costly for all involved." (*Id.* at 15.) Plaintiff also argues that "there would be no harm to the Defendants from staying, rather than dismissing the claims, pending completion of the mediation." (*Id.*) Defendants have filed a reply brief contesting Plaintiff's three arguments. (*See generally* Docket Entry 14.)

## II. DISCUSSION

### A. Choice of Law

Because Plaintiff filed this case in federal court in North Carolina based on diversity jurisdiction, the Court must apply the substantive law of North Carolina. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004) ("A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules.") (citations omitted). Under North Carolina law, "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). As noted

---

[3] In its opposition brief, Plaintiff discusses conversations between Plaintiff's and Defendants' counsel "about an extension of time for the Defendants to answer, the possibility of [Defense Counsel] accepting service for all three Defendants, and the possibility of conducting an early mediation." (Docket Entry 13 at 6-9.) Plaintiff submits as Exhibits to its opposition brief a signed and sworn affidavit of Dean E. Vavra, President and CEO of MIS, and the email exchange between Plaintiff's Counsel, Alan Parry, and Defendants' Counsel, Michael J. Lambert. (*See generally* Docket Entry 13-1.)

5

above, Section 7.4 of the Unit Purchase Agreement provides that such agreement shall be governed by New Hampshire law; therefore, New Hampshire contractual law applies for purposes of construing the Unit Purchase Agreement.

### B. Standard of Review

Defendants move for dismissal of Plaintiff's complaint pursuant to Rule 12(b)(1), Rule 12(b)(6), or the Court's inherent power and discretion to control its docket. (*See generally* Docket Entry 8.) In the alternative, Defendants seek a stay pending mediation. (*Id.*)

A motion under Rule 12(b)(1) raises the question "whether [plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The plaintiff bears the burden of establishing subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). When evaluating a Rule 12(b)(1) motion to dismiss, a court may consider evidence outside the pleadings and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

On the other hand, a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) raises the question of whether the plaintiff's complaint or pleadings are legally sufficient. In other words, a 12(b)(6) motion to dismiss should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations must "be enough to raise a

right to relief above the speculative level." *Id.* at 555 (citations omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). As explained by the Supreme Court,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Here, the basis for Defendants' motion to dismiss, under either Rule 12(b)(1) or Rule 12(b)(6), is Plaintiff's failure to mediate before filing suit, which is a contractually agreed upon condition in MIS and HEO3's Unit Purchase Agreement. (*See* Ex. A, Docket Entry 1-1.) "Courts in th[e Fourth] Circuit are divided as to whether failure to comply with a contractual pre-suit dispute resolution requirement deprives a court of jurisdiction under Rule 12(b)(1), or is more properly considered under Rule 12(b)(6)." *All. Consulting, Inc. v. Warrior Energy Res., LLC*, No. 5:17-CV-03541, 2017 WL 3485004, at *3 (S.D. W. Va. Aug. 14, 2017) (citing cases in the Fourth Circuit decided under 12(b)(1) or 12(b)(6)). Under the 12(b)(1) standard, courts have found that the parties to a lawsuit have elected not to be subject to a court's jurisdiction until some contractually-agreed upon condition precedent, such as mediation, is satisfied. *See, e.g., Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651 (E.D. Va. 2010). For such courts, the appropriate remedy is to dismiss the complaint. *Id.* at 652. In dismissing the complaint,

7

courts observe that, on one hand, dismissal may arguably prove inefficient and futile, but, on the other hand, if the contract requires pre-suit mediation, courts must hold the parties to their clear intent to complete mediation prior to litigation. *Id.*

Other courts reject the argument underlying the Rule 12(b)(1) analysis that the parties' failure to comply with a contractual pre-suit mediation condition deprives a court of its jurisdiction to hear the case. *See Kane Builders S & D, Inc. v. Maryland CVS Pharmacy, LLC*, No. DKC 12-3775, 2013 WL 2948381, at *2 (D. Md. June 13, 2013) ("Failure to satisfy a contractual condition precedent to litigation cannot divest the court of subject matter jurisdiction."); *Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, No. 3:13CV442-JAG, 2013 WL 5962939, at *2 (E.D. Va. Nov. 6, 2013) ("The Court's power to hear a contractual dispute is unaffected by whether the parties have complied with that contract.") Instead, these courts consider motions to dismiss based on alleged failure to mediate pre-suit under Rule 12(b)(6). *See Kane Builders*, 2013 WL 2948381, at *2 ("Defendant's motion to dismiss . . . is instead properly considered under Rule 12(b)(6)"). Under this standard, courts will determine whether the plaintiff's failure to comply with a contractual mediation provision precludes the plaintiff from seeking relief and requires that the plaintiff's claims be dismissed. *Id.*

Finally, some courts do not believe that applying one standard over the other would affect the court's analysis since the terms of the parties' contract will dictate the outcome. *See, e.g.*, *All. Consulting*, 2017 WL 3485004, at *3 ("Whichever standard [12(b)(1) or 12(b)(6)] is applied, however, the terms of the parties' contract govern, and require dismissal."). However, for cases in which the terms of the contract may not be plainly clear, some courts have relied upon a court's "broad authority . . . to control its docket" to grant judicial remedies and to

exercise the court's discretion to either stay or dismiss the case. *Dominion Transmission*, 2013 WL 5962939, at *4 (citation omitted).

**C. Analysis**

Here, the parties do not dispute that this federal court has jurisdiction pursuant to the requirements of 28 U.S.C. § 1332: complete diversity of citizenship among the parties and the amount in controversy are both easily satisfied in this case.[4] Therefore, this court has subject matter jurisdiction over this case. *See Kane Builders*, 2013 WL 2948381, at *2 (finding that Plaintiff's failure to comply with mediation condition precedent "has no bearing on the court's power to hear the case"). "While the Court may not dismiss the complaint under Rule 12(b)(1) grounds, it is vested with the discretion to determine an appropriate judicial remedy for [a party's] failure to comply with a condition precedent, to include staying the case or dismissing the complaint." *Dominion Transmission*, 2013 WL 5962939, at *2. Thus, under the Court's broad authority to control its docket and in determining the appropriate judicial remedy here, the undersigned finds that a stay of this action pending mediation is warranted.[5]

As previously discussed, the Unit Purchase Agreement is governed by New Hampshire law, and such law requires a court to "interpret the intended meaning [of a contract] from the

---

[4] Plaintiff is a North Carolina non-profit corporation, Defendant HEO3 is a New Hampshire limited liability company, S. Edward Neister is a citizen of New Hampshire, and John Neister is a citizen of Massachusetts. (Compl. ¶¶ 1-4, Docket Entry 1 at 2.) Since Plaintiff seeks recovery of its $ 2 million investment in HEO3, along with other compensatory and punitive damages, the $75,000 amount in controversy required by 28 U.S.C. § 1332 is also satisfied.

[5] As the parties have relied upon declarations, affidavits and email communications outside the Complaint, the undersigned finds that an analysis based solely pursuant to Rule 12(b)(6) to be inappropriate. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016) ("A motion to dismiss tests the sufficiency of a complaint . . . and our evaluation is thus generally limited to a review of the allegations of the complaint itself."); *Lambeth v. Carolina Pers. Co.*, 358 F. Supp. 2d 484, 486 (M.D.N.C. 2005) ("[T]he court does not consider evidence outside the pleadings in deciding a Rule 12(b)(6) motion.").

contract itself without resort to extrinsic evidence" if the court first finds that "the language of the contract is clear and unambiguous." *Carpenter v. Levine*, No. 2011-0082, 2012 WL 12830339, at *2 (N.H. May 16, 2012). Section 7.14 of the Unit Purchase Agreement, discussed and cited above, provides:

> Dispute Resolution. In the event of any dispute regarding the interpretation, breach or enforcement of this Agreement, the parties will first endeavor to resolve such dispute through direct discussions between the chief executive officers of the Company [HEO3] and the Purchaser [MIS]. If such discussions do not result in a resolution, then the parties will submit the dispute to mediation with a mediator reasonably acceptable to the Company [HEO3] and the Purchaser [MIS] for a period of not less than thirty (30) days. If such mediation does not result in a resolution of the dispute, either party may bring an action in court.

(Ex. A, Docket Entry 1-1 at 16.) The Court finds that the Unit Purchase Agreement's language is clear and unambiguous with respect to Section 7.14: the parties intended for mediation to be required before filing suit.

Indeed, neither party contests the validity or application of the mediation provision to the Unit Purchase Agreement, and the record clearly demonstrates that mediation did not occur before Plaintiff filed its Complaint. Instead, the parties disagree as to the scope of the Unit Purchase Agreement's mediation provision.[6] Therefore, the Court must determine whether and which of Plaintiff's eleven causes of action "regard[] the interpretation, breach, or enforcement of th[e] [Unit Purchase] Agreement." *See Tattoo Art*, 711 F. Supp. 2d at 650 (applying a two-part test when considering defendants' motion to dismiss: whether "(1) the

---

[6] Defendants state "this action arises out of the Unit Purchase Agreement and alleges a breach of that agreement." (Docket Entry 9 at 3.) Plaintiffs argue that the mediation provision is limited in scope to the Unit Purchase Agreement. (Docket Entry 13 at 11-12.)

10

Plaintiff's claims arise out of the Agreement and thus fall within the mediation provision, and (2) if so, whether Plaintiff satisfied the condition precedent by requesting mediation prior to filing the lawsuit."). Because the Plaintiff failed to mediate *before* filing suit, as is contractually required under the Unit Purchase Agreement, any cause of action or claim within the scope of the Unit Purchase Agreement's mediation provision is before this Court prematurely.[7]

The parties advance competing readings as to the scope of the mediation provision's text. Specifically, Defendants argue that "[t]his entire lawsuit arises from MIS's investment in HEO3, and that investment was made through the Unit Purchase Agreement." (Docket Entry 14 at 3.) Based on Defendants' position, but for the Unit Purchase Agreement, Plaintiff would not have any claims against any of the three Defendants.

Plaintiff, on the other hand, contends that the mediation provision limits the range of potential disputes that require pre-suit mediation: the "narrow language [of Section 7.14] is significant because the claims asserted in this case are far broader than the scope of the Unit Purchase Agreement's mediation provision." (Docket Entry 13 at 10.) MIS seeks to rebut Defendants' broader reading, arguing that "the Unit Purchase Agreement's mediation provision is not expansive – e.g., it does not purport to extend to any disputes or claims 'arising out of or relating to' that Agreement." (*Id.* at 11.) Among other cases, MIS cites to the holding in *J. Dunn & Sons v. Paragon Homes*, 110 N.H. 215, 218, 265 A.2d 5, 8 (1970), whereby the Supreme Court of New Hampshire found that an arbitration provision covering "any dispute

---

[7] Plaintiff offers an email exchange between Plaintiff's counsel and Defendants' counsel that discusses the possibility of mediation, but this email exchange occurred *after* Plaintiff filed its complaint. (*See generally* Email Chain, Docket Entry 13 at 6-15.) Therefore, Plaintiff failed to mediate *before* filing suit, as is contractually required under the Unit Purchase Agreement.

11

or disagreement . . . concerning . . . the terms . . . performance . . . breach . . . or . . . interpretation" of the contract between the parties applied to contract claims but not tort claims. (*See* Docket Entry 13 at 11.) To support its narrow reading, Plaintiff in the instant matter emphasizes that two of the three Defendants, the Neisters, were not parties to the Unit Purchase Agreement and that its causes of action concern two agreements other than the Unit Purchase Agreement and raise "numerous tort and statutory claims," none of which are subject to the Unit Purchase Agreement. (*Id.* at 11.)

While Plaintiff correctly notes that courts have distinguished between narrower and broader interpretations of mediation and arbitration clauses based upon the language of the clause, neither party can dispute that at least a fraction of the claims here are subject to the mediation provision in the Unit Purchase Agreement. At minimum, Count Four alleges a breach of the Unit Purchase Agreement itself and Count Six alleges implied duties created from the Unit Purchase Agreement. (*See* Compl. ¶¶ 64-69, 76-82.) Counts Seven, Ten and Eleven arguably touch upon the "interpretation, breach or enforcement" of the Unit Purchase Agreement as they allege duties owed to MIS and conduct of the Neisters in procuring breaches of this agreement and the other agreements.[8] (*See id.* ¶¶ 83-91, 108-114, 115-122.)

---

[8] The Court notes that New Hampshire law has held that

> the determination of whether an action is on a contract or in tort is not controlled by the form of the action but by its substance. The source or origin of the duty alleged to have been violated; the nature of the grievance; the character of the remedy such facts indicate; the type of damages sought; are important factors in making such determination.

*J. Dunn & Sons,* 110 N.H. at 217, 265 A.2d at 7 (internal citations omitted).

12

Thus, at least a fraction of Plaintiff's claims falls within the scope of the mediation provision. As to such claims, this Court chooses to follow the approach of other courts that grant a stay in proceedings pending court-ordered mediation, rather than a dismissal of some or all of Plaintiff's claims under Rule 12(b)(6). *See, e.g., Dominion Transmission*, 2013 WL 5962939, at *4 ("The Court, when confronted with a defendant's objection that the plaintiff failed to comply with a condition precedent, has the discretion to either stay or dismiss the case.") (citation omitted).

Before discussing the Court's recommendation to stay the proceedings pending mediation, the Court will address Plaintiff's argument that Defendants have waived the right to assert the mediation provision and are equitably estopped from asserting the provision. (Docket Entry 13 at 12.) Under New Hampshire law, waiver of a party's "right to arbitration [or mediation] is a question of fact for a trial court to determine from the circumstances of each case." *Logic Assocs., Inc. v. Time Share Corp.*, 124 N.H. 565, 571, 474 A.2d 1006, 1010 (1984) (citation omitted). "Waiver requires a finding of an actual intention to forego a known right," and "waiver can be inferred from a course of conduct." *Id.* (internal quotations and citations omitted). Also, under New Hampshire law, a party claiming equitable estoppel must prove four elements:

> first, a false representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have intentionally, or through culpable negligence, induced the other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury. . . . [and] the reliance upon the representation or concealment must have been reasonable.

*In re Perkins*, 147 N.H. 652, 655, 798 A.2d 596, 600 (2002) (citations omitted).

Relying on the declaration of its CEO, (*see* Vavra Decl., Docket Entry 13-1), Plaintiff argues that Defendants waived their right to assert the Unit Purchase Agreement's mediation provision based upon Defendants' conduct; however, this argument is not persuasive. In its opposition brief, Plaintiff states that "Defendants' unwillingness to meet, talk, or share information voluntarily" provided MIS with "no choice but to file this action to enforce its rights." (Docket Entry 13 at 13.) After filing suit, Plaintiff states that it "repeatedly conveyed its willingness to mediate the dispute, including offering to host a mediation on numerous dates prior to Defendants' deadline to appear and respond in the case." (*Id.*) However, Defendants' alleged conduct does not relate to their right to invoke the Unit Purchase Agreement's mediation provision and does not amount to a finding of Defendants' actual intention to forego the right to assert mediation as a condition precedent to suit. Moreover, Plaintiff does not allege that it made any efforts to formally mediate with Defendants *before* filing suit, and the record does not indicate that Plaintiff made any such effort.[9] Thus, the Court finds that Defendants did not waive their right to assert the mediation provision in the Unit Purchase Agreement.

---

[9] Defendants filed an affidavit with their brief in which John C. Neister, one of the Defendants, states that "[p]rior to filing the Complaint in this matter, MIS never mentioned, suggested or demanded that MIS and HEO3 engage in mediation to address any of MIS's concerns." (John C. Neister Aff. ¶ 3, Docket Entry 9-1.) In addition, in the July 15, 2019 email correspondence between parties' counsel, Defendants' counsel "note[d] that the Unit Purchase Agreement contains a mandatory dispute resolution provision" and asks Plaintiff's counsel to "comply with the dispute resolution process." (Email Chain, Docket Entry 13-1 at 15). This email undercuts Plaintiff's argument that Defendants waived and actually intended to forego their right to assert the Unit Purchase Agreement's mediation provision.

14

Plaintiff's argument that Defendants should be equitably estopped from asserting the Unit Purchase Agreement's mediation provision is similarly unpersuasive. For the same reasons above, Plaintiff did not make any effort to formally mediate with Defendants *before* filing suit and cannot appeal to the Court's equitable discretion as it relates to the Unit Purchase Agreement's mediation provision. Therefore, the Court finds that equitable estoppel is not appropriate in this case.

Having found that neither waiver nor equitable estoppel is applicable here, the Court now turns its attention to the appropriate judicial remedy for Plaintiff's failure to mediate some of its claims as a condition precedent to litigation. As previously stated, the Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Moreover, when reviewing and enforcing contractual mediation provisions, a court has "inherent authority to issue stays in many circumstances, and granting a stay to permit mediation (or to require it) will often be appropriate." *Kane Builders*, 2013 WL 2948381, at *3 (internal quotations and citation omitted).

This Court finds that granting a stay in this action is the appropriate remedy here. The parties are only contractually bound to attempt to mediate in good faith before filing suit. Granting a stay puts the parties in the same position that they bargained for in the Unit Purchase Agreement and results in little or no prejudice to either party. *See Kane Builders*, 2013 WL 2948381, at *4 (granting stay in proceedings for the same reasons). The Court further notes that the parties have previously expressed a willingness to mediate, noted in their respective briefs as well as in the email exchange between both parties' counsel. (*See generally* Docket Entry 9 at 7; Docket Entry 13 at 15-16; Email Chain, Docket Entry 13-1 at 6-15.) Of

course, the Court acknowledges that the dynamics between the parties, now that litigation has been initiated, may be different. Plaintiff specifically raises concerns that Defendants will not mediate in good faith. (*See* Docket Entry 13 at 15 (alleging that "Defendants' newfound interest in mediation is anything other than purely tactical.").) However, the Court will not allow a potential concern about whether the parties will or will not mediate in good faith dictate its decision. Rather, to avoid inefficiency and to require the parties to adhere to the terms of the Unit Purchase Agreement, this Court recommends a stay in proceedings pending mediation.

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss or, in the Alternative, to Stay Pending Mediation (Docket Entry 8) be **DENIED IN PART**, with respect to dismissal, and **GRANTED IN PART**, to the extent this case be stayed pending mediation.

                                                                                             _____
                                                                                             Joe L. Webster
                                                                                             United States Magistrate Judge

December 11, 2019
Durham, North Carolina